IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds, <br><br> Plaintiffs, <br><br> v. <br><br> AJ TRUCKING, LLC, an Illinois corporate, entity, <br><br> Defendant. | Case No.: <br><br> Judge: |

## COMPLAINT

NOW COMES Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund and Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds (collectively herein referred to as the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Sara S. Schumann, for their Complaint against Defendant AJ Trucking, LLC, as follows:

### FACTS COMMON TO ALL COUNTS

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

1

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by Funds' Trustees to act on behalf of Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago & Vicinity Training Fund, Industry Funds, and with respect to the collection by Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago & Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant AJ Trucking, LLC (the "Company") is an Illinois corporate entity that conducts business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District. The Union and Company are parties to collective bargaining agreements, from August 25, 2021 to present. (A true and accurate copy of the Company's "short form" agreement entered into between the Union and Company which adopts and incorporates Master Agreements between the Union and various employer associations,

and also binds Company to the Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)  The short form and the Master Agreements together are referred to as the Agreement or the CBA.

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago & Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as collection agent for overdue contributions to those funds, which are collectively referred to as Industry Funds or Ancillary Funds.

8. The Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits and for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  Pursuant to the terms of the Agreement and the Funds respective Agreements

3

and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

9. The Pension, Welfare and Retiree Health and Welfare Declaration of Trust Agreement documents provide the respective Trustees with the power to formulate, establish and maintain collection procedures for the collection of contributions, and those actions, procedures and policies are binding upon all Contributing Employers.

10. The Funds' Amended and Restated Collection Policies and Procedures provides that in the event the Funds files suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer after the lawsuit is filed will be assessed liquidated damages at twenty percent (20%) of the contributions owed. This Collection Policy was adopted by the respective Trustees for the Pension, Welfare and Retiree Health and Welfare Funds.

11. The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions the delinquent employer is liable for reasonable attorneys' fees, audit costs, interest and filing costs incurred in the collection process.

12. The Funds' Collection Policy provides any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

13. In addition to fringe benefit reports, the CBA obligates Company to monthly submit and pay Dues Reports. Company is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit monthly to the Union office the sums so deducted.

14. The CBA also requires Company to pay contributions to the Industry Funds. These contributions are paid as part of the Dues Reports. The CBA requires Company to pay eight cents

($.08) for each hour worked by employees covered by the CBA to the Chicago Area Independent Construction Association ("CAICA"), seven cents ($.07) for each hour to the Chicago-Area Laborers-Employers Cooperation and Educational Trust ("LECET") and nineteen cents ($.19) per hour to the Laborers' District Council Laborer Management Cooperation Committee ("LMCC"). The total Industry Fund contribution is thirty-four cents ($.34) per hour.

15. Dues Reports and contributions are due by the 10th day following the month in which the work was performed. Dues Reports and contributions which are not submitted in a timely fashion are assessed liquidated damages at ten percent (10%) of the union dues report amount.

16. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues, which should have been, or were, deducted from the wages of covered employees.

17. The Agreement and the Funds' respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

18. The Agreement further requires Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension, and welfare benefits.

19. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company failed to submit its books and records as requested for the audit period, covering from October 1, 2023, forward, thereby depriving the Funds of information and income necessary to administer the respective Funds. Exhibit B attached hereto is a true and accurate copy of the letter from Legacy Professionals, LLP, detailing Company's failure to comply with the audit (the "Legacy Audit").

20. Company's actions in failing to submit to the Legacy Audit violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA.

## COUNT I
**(Failure To Submit Delinquent Employee Benefit Contributions
For the Audit Period October 1, 2023 to the Present)**

21. The Funds re-allege and incorporate the allegations contained in paragraphs 1-20 of this Complaint.

22. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the period of October 1, 2023 to the present, but:

(a) failed to report and pay all contributions owed to the Funds from October 1, 2023 to present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay all contributions owed to the Funds from October 1, 2023 to present, thereby depriving the Health and Welfare Fund contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay all contributions owed to Funds from October 1, 2023 to present, thereby depriving the Retiree Welfare Funds of contributions, income and information needed to administer that Fund and jeopardizing the Retiree Welfare benefits of the participants and beneficiaries;

(d) failed to report and pay all contributions owed to the Funds from October 1, 2023 to present, thereby depriving the Training Fund of contributions, income and information needed

6

to administer that Fund and jeopardizing the Training Fund benefits of the participants and beneficiaries;

(e) failed to report and pay all contributions owed to the Funds from October 1, 2023 to present, thereby depriving the Industry Funds of contributions, income and information needed to administer those Industry Funds and jeopardizing the benefits of the participants and beneficiaries.

23. Pursuant to the Agreement and the Funds' Agreements and Declarations of Trust, Company is liable for the liquidated damages assessed against the unpaid amounts owed from October 1, 2023 to present at twenty percent (20%) for the unreported monthly amount(s).

24. The Company's failure to submit to the Legacy Audit and to timely submit monthly reports with payments of fringe benefits violates Section 515 of ERISA, 29 U.S.C. §1145.

25. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to Funds for the unpaid contributions, as well as interest and liquidated damages on all unpaid contributions, and obligated for accumulative liquidated damages on any untimely paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs the Funds respectfully request that this Court:

a. order AJ Trucking, LLC to submit its books and records for the Legacy Audit, covering the period of October 1, 2023 to present;

b. enter judgment in sum certain in favor of the Funds and against Defendant AJ Trucking, LLC for the amounts owed pursuant Defendant's unpaid monthly fringe benefit reports from October 1, 2023 to present, as determined by the Legacy Audit, plus liquidated damages,

accumulated liquidated damages, interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

c. enter judgment in favor of the Funds and against the Defendant AJ Trucking, LLC for the monthly fringe benefit reports that become due and are unpaid during the pending litigation plus liquidated damages, interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

d. order AJ Trucking, LLC to obtain and maintain a surety bond in accordance with the terms of the Agreement; and

e. award Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II
### (Failure to Submit Reports and/or Pay Monthly Union Dues)

26. The Funds re-allege and incorporate the allegations contained in paragraphs 1-25 of this Complaint.

27. Pursuant to agreement, the Funds are duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from wages of covered employees.

28. Dues reports and contributions are due by the 10th following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages at 10% of the report amount.

29. Notwithstanding the obligations imposed by the Agreement, Company has performed covered work from October 1, 2023 forward and has failed to withhold and/or report to and forward Union dues that were deducted, or should have been deducted, from the wages of its employees from October 1, 2023 forward, thereby depriving the Union of income and information.

30. Further, Company's failure to timely submit its monthly dues reports and payments per the terms of the Agreement will result in accumulative liquidated damages, as those are also subject to liquidated damages assessed at 10% of the untimely paid amount.

31. Pursuant to the Agreement, Company is liable to the Funds for the unpaid Union dues, as well as liquidated damages, accumulative liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court:

a. order Defendant AJ Trucking, LLC, to submit to the Legacy Audit for the period of October 1, 2023 to present;

b. enter judgment in sum certain in favor of the Funds and against Defendant AJ Trucking, LLC on the amounts found due and owing pursuant to the Legacy Audit, covering October 1, 2023 to present, including for all unpaid monthly dues reports from October 1, 2023 forward, plus all related liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

Chicago & Vicinity Laborers' Pension Fund, et al.,

September 25, 2025  By:    /s/ Sara S. Schumann
                                               *Counsel for Plaintiffs*

Sara S. Schumann
Associate Fund Counsel
Laborers' Pension and Welfare Funds
11465 W Cermak Rd.
Westchester, IL  60154
(312) 692-1497
SaraS@chilpwf.com



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between __AJ Trucking LLC__ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Concrete Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020; said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: __August 25__, 20__21__.

ACCEPTED:
Laborers' Local Union No. __1__

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: __Chicago Area Independent Construction Association__

Effective June 1, 2017    WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

__AJ Trucking LLC__

FEIN No. _____

By: __Jonathan Morris__ __President__
(Print Name and Title)

_____ (Signature)

__23 N. Wabash__
(Address)

__Chicago IL 60602__
(City, State and Zip Code)

__312 509 2607__
(Telephone/Telefax)

__Jonathan@jmaterialsllc.com__
(Email Address)

**Exhibit A**



September 23, 2025

Pension and Welfare Funds of Construction and General
   Laborers' District Council of Chicago and Vicinity
Attn: Gina Harkness
11465 Cermak Road
Westchester, Illinois 60154

RE: Unable to schedule audit for AJ Trucking LLC, employer # 35893

Ms. Harkness:

We have been requested by the Trustees of the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity to conduct an audit of the referenced contractor's records, covering the period from October 1, 2023 through present.

On August 13th, 2025, I spoke with Jonathan Morris at the company, and we scheduled for the records to be provided via our secure portal by September 10th. On September 8th, I received an email from Emily Arnold, introducing herself as the new Operators Manager at the company and asking for an extension of the deadline. We extended the deadline to end of day September 17th. On September 16th, Emily emailed saying their office computer crashed, requesting another extension. The deadline was extended to end of day September 22nd.

To date, no records have been provided, and all records listed on the confirmation letter (attached) are still necessary for the audit.

Sincerely,

Eric Trout
Compliance Auditor

cc: Alicia Grossi
    Luz Andrade
    Maxy Mills
    Terrence Truesdale

**Exhibit B**



August 13, 2025

AJ Trucking LLC
Attn: Jonathan Morris
401 N Wabash Unit 54C
Chicago, IL 60611-0000

Dear Mr. Morris:

This letter is to confirm our conversation scheduling September 10, 2025 as the date to perform the compliance audit on behalf of the Laborers' Pension & Welfare Funds for the period of October 1, 2023 to the present.

As we discussed at that time the following records will be needed to complete the compliance audit:

1. Quarterly and annual payroll tax returns, including, but not limited to, Federal Quarterly Form 941, Federal Annual Forms W-2, W-3, 940, 1099 and State Quarterly Unemployment Returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked, and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked, and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues reports and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source document and lists of job codes and/or equipment codes.

10. Certified payroll records for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to the last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeymen, foreman, superintendent, or supervisor. Confidential medical records or other private records not relevant to an employee's job classification shall not be disclosed.

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall produce monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

14. A copy of your current wage and fringe bond.

15. Copies of general liability and Workers' Compensation audits.

16. The complete annual Federal business income tax returns, including all schedules and attachments: either Form 1120, 1120-S, 1065, or 1040 Schedule C, whichever is applicable.

While we anticipate that our review of the above records will allow us to complete the engagement, occasionally the audit may warrant review of additional records. If any of the above listed records will not be made available for our audit, please contact us as soon as possible.

Sincerely,

Eric Trout
Compliance Auditor

cc via separate communication:  Gina Harkness
Alicia Grossi
Luz Andrade
Maxy Mills